# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

VELMA LADONNA JOHNSON,

    Plaintiff,

    v.                                     Case No. 14-CV-1433

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

## DECISION AND ORDER

Velma LaDonna Johnson seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

Johnson filed an application for disability insurance benefits and supplemental security income alleging disability beginning on February 19, 2011 due to carpal tunnel syndrome, anxiety, rheumatoid arthritis, hepatitis C , and anemia. (Tr. 18.) Johnson also testified that she experienced pain involving her hands, shoulders, knees, feet, and left hip. (*Id.*) The claim was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on July 18, 2013. (Tr. 38.) Johnson testified at the hearing, as did John Reiser, a vocational expert ("VE"), and Star Johnson, Johnson's daughter. (Tr. 84.)

In a written decision issued September 20, 2013, the ALJ found that Johnson had the severe impairments of polyarthralgias, hepatitis C, anxiety, and personality and substance addiction

disorders, the latter presumably in remission. (Tr. 24.) The ALJ found that Johnson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (*Id.*) The ALJ found Johnson had the residual functional capacity ("RFC") to perform light work, with the following limitations: limited to simple, routine, repetitive tasks requiring no more than occasional interaction with others; no ladder, rope, or scaffold climbing; no exposure to hazards (i.e., unprotected heights, dangerous moving machinery, etc.); frequent balancing or stooping; and only occasional crawling, crouching, and stair-ramp climbing. (Tr. 25.)

The ALJ found that Johnson was capable of performing her past relevant work as a maid or cleaner; alternatively, the ALJ found that based on Johnson's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Johnson could perform. (*Id.*) As such, the ALJ found Johnson was not disabled from February 19, 2011 through the date of the decision (September 20, 2013). (Tr. 25–26.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 3–7.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an

ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### *2. Application to this Case*

Johnson argues the ALJ erred by: (1) adopting the Global Assessment of Functioning ("GAF") score assigned to Johnson by her treating providers at Catholic Charities rather than adopting the GAF assigned to her by treating source Dr. Callaghan and examining source Dr. Rudolph; (2) improperly weighing the opinions of the state agency medical consultants; and (3) improperly weighing the opinion of Johnson's treating rheumatologist, Dr. Chowdhery. I will address each argument in turn.

#### 2.1 Weight Given to GAF Evidence

Johnson argues the ALJ erred by adopting the GAF of 55 from her treating mental health providers at Catholic Charities, as opposed to adopting the GAF of 45 assigned by her treating psychiatrist, Dr. Callaghan and the consultative medical examiner, Dr. Rudolph. GAF is measured

on a 0–100 scale, with scores of 41–50 indicating serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job), *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (4th ed. 2000)), and scores of 51–60 reflecting "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) [or] moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)," *Jelinek v. Astrue*, 662 F.3d 805, 807 n.1 (7th Cir. 2011). The Fifth Edition of the DSM, published in 2013, abandoned the GAF scale. *Williams*, 757 F.3d at 613.

As an initial matter, although Johnson argues the ALJ erred in failing to consider Dr. Callaghan's May 21, 2014 opinion (Tr. 780–82), the opinion post-dates the ALJ's September 20, 2013 decision. When the Appeals Council refuses to review a case (as is the case here), the correctness of the ALJ's decision depends on the evidence that was before him. *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993). While this additional evidence was later presented to the Appeals Council (Tr. 3–7), it was not before the ALJ. Thus, the ALJ cannot be faulted for failing to consider it. Johnson does not argue that the Appeals Council erred in declining to review her case. Johnson tacitly acknowledges this fact by dropping any mention of Dr. Callaghan from her reply brief. (Docket # 48.)

I do not agree the ALJ erred in his consideration of the GAF evidence. The ALJ notes that Johnson treated with Catholic Charities for counseling in March, June, and September 2012. (Tr. 20.) Her initial GAF assessment in March was 50 (Tr. 771), in June was 55 (Tr. 760), and in September was 57 (Tr. 762). The ALJ noted that these increases suggested progressive improvement. (Tr. 20.) Dr. Rudolph, a consultative examiner who examined Johnson once on September 28, 2011,

opined her GAF was 45. (Tr. 400.) The ALJ noted that while Dr. Rudolph assigned a low GAF, his actual examination was fairly unremarkable and ongoing treatment notes indicated that when Johnson was taking her medication and not using drugs or alcohol, she was quite functional. (Tr. 23.) The ALJ properly explained the weight given to the GAF evidence and it is reasonable the ALJ would accord greater weight to Johnson's treating providers at Catholic Charities who saw Johnson over a period of time, rather than the consultative examiner who saw Johnson on one occasion. Thus, the ALJ did not err in this regard.

### 2.2 Weight Given to Medical Sources

Johnson argues the ALJ erred in relying on the opinions of the State Agency physician, Dr. Byrd, and consultative examiner, Dr. Reintjes, because Dr. Reintjes fails to discuss the effects of Johnson's cryoglobulinemia and hepatitis C on her joint function. Johnson further argues the ALJ erred by failing to assign great weight to the opinion of her treating rheumatologist, Dr. Chowdhery.

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. A treating physician's opinion about the nature and severity of the claimant's impairment is normally given controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with substantial evidence in the record. *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. *Id.* at 561.

State Agency physician Dr. Byrd opined on January 4, 2012 that Johnson could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; stand and/or walk about

six hours in an eight–hour workday; and sit for a total of about six hours in an eight–hour workday. (Tr. 489.) Dr. Byrd found Johnson's statements that she could only walk two to three blocks partially credible, namely because on physical examination her gait was normal and there was no evidence of neurologic defects. (Tr. 493.) Dr. Byrd opined Johnson should be limited to light work because of her hepatitis C and osteoarthritis. (Tr. 495.) Dr. Byrd's opinion relies, at least partly, on the September 22, 2011 consultative examination conducted by Dr. Reintjes. (Tr. 372–76, 495.)

The ALJ states that he is "inclined to give greater weight to those restrictions offered" by Dr. Byrd. (Tr. 22.) Although the ALJ's explanation is extremely brief, Johnson's arguments are unfounded. Johnson faults Dr. Byrd for relying on Dr. Reintjes' examination, arguing that Dr. Reintjes did not address her cryoglobulinemia or hepatitis C. But Dr. Reintjes did address her history of hepatitis C and joint pain (Tr. 374) and Dr. Byrd clearly considered her hepatitis C and joint issues in restricting her to light work (Tr. 495). While neither Dr. Byrd nor Dr. Reintjes specifically mentioned the cryoglobulinemia, this is a condition associated with hepatitis C and it is unclear how that would have changed either physician's opinion.

Johnson also faults the weight given to her treating rheumatologist's opinion, Dr. Chowdhery. Dr. Chowdhery opined that Johnson should avoid bending, can lift and carry five pounds, can sit for four hours, stand for two hours, and should avoid pushing, crawling, reaching, and twisting. (Tr. 776–77.) Dr. Chowdhery opined that Johnson would need two to three breaks of fifteen to twenty minutes each where she would need to sit with her leg elevated. (Tr. 777.) Dr. Chowdhery opined Johnson would miss three to four or more days per month of work. (*Id.*)

The ALJ assigned limited weight to Dr. Chowdhery's opinion because the opinion was inconsistent with the underlying treatment records, the objective evidence, the provider's contemporaneous progress notes, and Johnson's stated activities. (Tr. 22–23.) Beyond noting that

Dr. Chowdhery is a rheumatologist who treated Johnson over an extended period of time and diagnosed her with hepatitis C and cryoglobulinemia, Johnson is short on explanation as to how the ALJ erred. (Pl.'s Reply Br. at 2–4, Docket # 48.) Dr. Chowdhery's opinion is inconsistent with her treatment notes. While Johnson had bilateral shoulder crepitus and stiffness on physical examination (Tr. 527, 533, 540, 550) and bilateral crepitus in the knees (Tr. 527, 541), she also consistently had no tenderness with normal range of motion and muscle tone in the spine (Tr. 526, 534, 540, 550), full range of motion without tenderness or stiffness in the hips (Tr. 540, 551), full range of motion in the ankles (Tr. 551), and normal neurological exams (i.e., no distal or proximal weakness, no clonus, no muscle atrophy, and no tremor) (Tr. 527, 540, 551). The ALJ also considered Johnson's stated activities. (Tr. 21.) Specifically, although Johnson stated that although she needs some assistance, she was able to wash dishes and put clothes in the washing machine (Tr. 210), shop for groceries in the store (Tr. 211), and walk two to three blocks before needing to rest (Tr. 213). When asked how many hours per day she could sit, stand, and walk, Johnson stated that she did not know. (Tr. 216.) The ALJ considered Johnson's activities (Tr. 21), as well as the medical evidence of record (Tr. 20–21) in discounting Dr. Chowdhery's opinion. I agree that the record evidence does not support the more restrictive limitations opined by Dr. Chowdhery and the ALJ did not err in assigning the opinion limited weight.

## CONCLUSION

Johnson argues the ALJ erred in his assessment of her GAF scores and in the weight given to the medical providers of record, specifically Dr. Byrd, Dr. Reintjes, and Dr. Chowdhery. I find that the ALJ did not err and his decision is supported by substantial evidence. Thus, the Commissioner's decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 31st day of October, 2018.

                                                BY THE COURT:

                                                *s/Nancy Joseph*
                                                NANCY JOSEPH
                                                United States Magistrate Judge